# APRIL 25, 1945

ENEMENCIO ALANIZ, JR., V. THE STATE.

No. 23091. Delivered March 21, 1945.
Rehearing Denied April 25, 1945.

The opinion states the case.

*Pittman & Pope,* of Corpus Christi, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Appellant was charged with assault with intent to murder Eva Lathon Alaniz. The jury found him guilty of assault with intent to murder without malice, and assessed his punishment at three years in the penitentiary.

No objection was interposed to the court's instruction to the jury, and no special charges were requested.

Only two bills of exception are brought forward, and each of them in different manner raises the question of the sufficiency of the evidence to support the judgment, especially upon the proposition that the State failed to show an intent upon the part of appellant to kill the assaulted party. The contentions mentioned call for a more detailed statement of the facts than would otherwise be necessary.

We adopt the State's brief as containing a fair recital of the facts from the State's evidence:

"Upon the date of the difficulty appellant and the injured party were husband and wife but were not living together at the time. The injured party testified that sometime prior to the date of her alleged injury she met appellant on the street and he asked her where she was working and she told him. He replied, 'If you are working for anybody over there I am going to cut your neck off if I catch you outside of the house.' She testified further that she quit working for Mrs. Hart but didn't tell her the real reason why she was quitting, but did testify that she quit working for Mrs. Hart because she was afraid of Enemencio since she had met him on the street several times and he told her that he was going to cut her neck off and threatened to kill her. She then made some investigation about getting a job at the Air Base and was going to try to get a job at the laundry.

"On the afternoon of the alleged injury said injured party had been to see about a job and was returning home about 5 or 5:30 in the afternoon and she met up with Enemencio and he asked her to stop, where she had been, and what she was going to do. She advised him that she was trying to get a job at the Air Base. He told her that she was not going to work nowhere; that she had better not get a job. He told her that he wanted her to come back and live with him; that if she didn't come back she was not going to be able to make a living, stating 'because I am going to kill you.' Further discussion and argument

was carried on between said parties and the injured party left, walking on toward her home. Appellant followed her, walking on the other side of the street. When they reached the railroad he stopped her again. He pulled out his knife and cut her across the chest, on both arms and her back. During the difficulty both parties fell across the fender of a car, and the injured party got up and ran across the street into a cafe, appellant running behind her and stabbing her three or four times under her arms. The injured party succeeded in getting the knife away from appellant. She then fell to the floor, stating that she did not know any more until she woke up in the Beeville hospital.

"Frank Probst, City Marshall of Beeville, testified that he saw a number of Mexican people running toward the restaurant in question and he hurried there and when he entered the place he saw this Mexican woman Eva, the injured party lying on the floor, completely covered with blood, with several gashes in her back, breast and across her arms, and they were bleeding very badly. He further testified that he knew she would bleed to death in just a few minutes if the flow of blood wasn't stopped so he got his first-aid kit and gave her first-aid treatment. He called an ambulance and had her taken to the hospital. He further testified that in his opinion, based upon his fourteen years' experience as a peace officer and from his examination of the knife, that it would certainly be calculated to produce death or serious bodily injury from the manner of its use.

"Cleve Naylor testified that he saw a part of this difficulty and that appellant had hold of the injured party and she was trying to get away from him; that he shoved her into the car and she was hollering and screaming and trying to get loose, and she finally broke loose from him and ran into Ben Mitchell's beer joint and he ran behind her, striking her and cutting her in the back.

"Dr. J. W. Edmundson, a physician and surgeon who had charge of the Beeville hospital, testified that the injured party was brought into his hospital; that she was unconscious and was suffering from a severe loss of blood at the time she reached the hospital, having several deep cuts in her body, especially the upper part, her right and left arms, her back and across her breast; and they were. bleeding severely at the time she was brought in and it was necessary to repair all of these places because they were not superficial wounds but were deep cuts and it required a lot of repair work to stop the flow of blood.

Further, he stated 'Had she not received prompt attention it is my opinion that the wounds she received could have easily resulted in her death, due to the fact that some of the blood vessels that had been severed were very large and it is very possible that she could have lost so much blood that it would have resulted fatally'."

Further evidence given by the injured party would support the jury in concluding that appellant assaulted his wife because he was unsuccessful in his efforts to get her to come back to him.

Appellant testified that the domestic trouble between him and his wife was caused by her; that the knife with which the cutting was done belonged to her; that she drew it on him and he took it away from her. He further testified regarding the difficulty, "I don't know what happened that night, because I was drunk, and that's all I've got to say." On cross examination he said: "It is not a fact that I pulled this knife out of my pocket. She pulled the knife on me and tried to cut me, and I grabbed the blade of the knife and took it away from her. She was not lying on the ground when I took the knife away from her; both of us were standing up at the time. When I took the knife away from her, I just closed it up and gave it back to her. My story is that I took the knife away from her, closed it up, gave it back to her, and calmly walked away, and that's all I've got to say."

The State's evidence which the jury evidently accepted as true was amply sufficient to show that the wounds inflicted upon appellant's wife were of a serious nature, which would support the jury's conclusion that the knife as used was a deadly weapon. If the doctor's evidence was believed, the wounds, in the absence of proper and prompt attention, would have produced death. Rose v. State, 123 Tex. Cr. R. 261, 58 S. W. (2d) 526; Butler v. State, 131 Tex. Cr. R. 543, 100 S. W. (2d) 707.

Appellant continued to cut his wife until she finally disarmed him. When considered in connection with the seriousness of the wounds, and appellant's threats to kill his wife, the evidence amply supports the finding of an intent to kill.

The judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

310

In his motion for rehearing, appellant presses upon us his contention that the facts are insufficient to warrant the conviction.

In Ammann v. State, 165 S. W. (2d) 744, followed in Tindall v. State, 172 S. W. (2d) 328-335, in determining the sufficiency of the evidence to support a conviction for assault with intent to murder, we announced the rule to be:

"If the weapon used is not deadly, the intent to kill on the part of the accused may be ascertained from and shown by the surrounding facts and circumstances. If it is possible that death might have been inflicted by the weapon used, and if the accused intended thereby to take life by the use made thereof, the offense of assault with intent to murder is complete, even though the instrument used was not a deadly weapon."

The facts bring the instant case within the rule stated.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.