RUBIN HUNT v. THE STATE.

No. 7622. Decided April 4, 1923.

**Assault to Murder—Deadly Weapon—Character of Injury.**

Where, upon trial of assault with intent to murder, the evidence showed that the wounds inflicted were not serious, and it was not shown that the weapon used was of a deadly character, or to justify the interference that a deadly weapon was used in inflicting the wound, the conviction cannot be sustained, although the declaration of the accused at the time he struck the blow was that he wanted to kill the injured party.—Following Wilson v. State, 34 Texas Crim. Rep., 65, and other cases.

Appeal from the District Court of Bexar. Tried below before the Hon. W. W. Walling.

Appeal from a conviction of assault with intent to murder; penalty, three years in the penitenitary.

The opinion states the case.

*Mauermann & Hair,* for the appellant.—On question of deadly weapon, Cage v. State, 77 S. W. Rep., 806; Martinez v. State, 33 id., 970; Salvador v. State, 185 id., 12; Foster v. State, 46 id., 231.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—Conviction is for assault with intent to murder; punishment fixed at confinement in the penitentiary for a period of two years.

Mae Johnson, the injured party, was the divorced wife of the appellant. They had engaged in an altercation in which she received several wounds and in which the appellant claims to have also received wounds. Both were taken to a hospital after the difficulty. The State's theory and testimony are that the wounds upon the appellant were self-inflicted. According to its testimony, appellant, during the fight, declared that it was his intention to kill. The parties were negroes. The description of the wounds by the prosecutrix is not very definite. She said, however, that he cut her over the right eye, "and he cut me here in the neck, right in the neck; he cut my throat." She said that she was soaked with blood and frightened nearly to death.

The evidence showed that the parties had had previous difficulties and that appellant had made assaults upon her at other times. She said: "That was a small knife he had; I don't know how many blades, but the officers have the knife. I did not have hold of the knife, but I saw the knife; the officers had it."

Doctor Dumas, who examined the prosecutrix on her arrival at the hospital, said:

"I examined the nature of her wounds, and they were on the anterior portion of the neck. The wound was an incise would and probably caused from a cutting instrument. *** That wound was about two inches long and possibly three. That cut itself did not extend quite far enough over, nor deep enough to be fatal, but if it had been continued a little bit deeper, it would have been likely to produce death. *** This wound was not deep enough to prove fatal, but if it had punctured the jugular vein, .it would probably have proved fatal. *** The wound was through the skin."

The doctor further stated that the wound was probably a quarter of an inch deep and would not have cut the jugular vein; that in his judgment, a small knife held so that it would not protrude over a quarter of an inch would not be considered a deadly weapon, used in that manner.

Appellant claimed that during the pendency of the divorce proceedings, he was living with the woman at her suggestion. In this statement he was corroborated by her testimony, and by that of several other witnesses, some of whom testified to admissions upon the part of the prosecutrix to that effect. She claimed in her testimony that they lived in the same house but not together as man and wife. It was his testimony that she began the fight, using a knife, and that he used his knife for self-protection; that he had no desire to kill her; that he could have killed her with his fist. He denied the intent to kill her or the expression of any such intent. He said: "I just had a small knife with a small blade on it, and I held my finger so it would not cut much."

According to the testimony of the prosecutrix, she remained in the hospital for about a week.

Appellant insists that there is no such evidence of the use of a deadly weapon as would justify the verdict for an assault with intent to murder.

In the Cage case (77 S. W. Rep. 806), the prosecutor testified that he was assaulted by Cage; that he was cut once in the left shoulder and once in the breast; that Cage said: "I will kill you, you *** son-of-a-bitch;" that the prosecutor went to the hospital and stayed three or four days, and that about a week after leaving the hospital, he went back there once to get his wounds dressed. The wounds were not described; neither the weapon that was used. The court held that in the absence of a description of the weapon showing it to be of a deadly character or such a description of the wounds as would justify the inference that a deadly weapon was used in inflicting them, that the mere declaration by the accused at the time he struck the blows would not be sufficient to justify a conviction for assault with intent to murder. Reference is made to Wilson v. State, 34 Texas Crim. Rep. 65; Jobe v. State, 1 Texas Crim. App. 183; Martinez v. State, 35 Texas Crim. Rep. 386; Parker

v. State, 53 S. W. Rep. 115; McLendon v. State, 66 S. W. Rep., 553. In line with these decisions in the case of Fregia v. State, 79 Texas Crim. Rep., 334, 185 S. W. Rep., 11. The application of these principles to the case in hand, in our judgment, requires that appellant's contention be sustained.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*