# NOVEMBER 11, 1942

ANDREW WILLIAM AMMANN V. THE STATE.

No. 22260. Delivered November 11, 1942.

The opinion states the case.

*Baskett & Parks,* of Dallas, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Assault with intent to murder is the offense; the punishment, 5 years in the State penitentiary.

Hensley, the injured party, was 32 years of age, 5 feet 10 inches tall, and weighed 150 pounds. Appellant, 57 years of age, weighed 211 pounds. His height is not revealed in the record.

The incident occurred at a cafe or beer tavern, on the outskirts of the City of Dallas, known as "Nan's" about 11:00 A. M. April 3rd, 1941. Appellant operated a monument works next door to the cafe. Hensley, while not regularly in the employ of appellant, worked for him from time to time. On the night previous to the assault, appellant and Hensley were in the cafe. An argument ensued between them, culminating in appellant's inviting Hensley out of the cafe, stating that he wanted to talk with him. Hensley complied and they left the building together. Hensley testified that, after they got out of the building, appellant drew a knife on him and threatened to cut him. Hensley, with his fist, knocked appellant down, when appellant put up his knife and said:

"I would not cut you for anything, come to the shop and I will give you a drink of whiskey."

Hensley refused and the parties separated. The next morning, at about the time heretofore mentioned, appellant was in the cafe, seated at a table, talking with some friends, when Hensley entered. After a time, appellant called to Hensley to "Come here." As to what then happened, we quote, from Hensley's testimony:

"I walked over there and put my hand on the table like this (indicating) and he got up, raised up like to tell me something and I turned my head to listen, and when I did that, I felt a knife or something cutting me. I backed to the marble table and the Coca Cola Bottle was setting there and I grabbed it and throwed it and looked for something else, and did get hold of a Dr. Pepper bottle and Mrs. McGee grabbed me and took me in the kitchen."

Appellant ran out of the building, and, as he did so, was heard to say: "I came over to do it, and I done it."

One witness testified that he said: "I come up here to stab him and I stabbed him."

Hensley was carried to the hospital for treatment, where he remained for a period of five days.

The attending physician described the wound as being a cut about eight or ten inches in length, beginning about the eighth rib on the left side and ending about three inches above the navel. The cut did not enter the abdominal cavity, it lacking about one-fourth to three-eighths of an inch of doing so. The doctor testified:

"This wound, I honestly don't think, that death would have resulted from hemorrhage if it had not been sewn up, from that wound."

At no time did the doctor express the opinion that the wound was dangerous or that death was likely to ensue therefrom. The doctor's statement just quoted was not challenged by any other testimony.

According to the State's witnesses, the knife used by appellant and with which the injury was inflicted was a small pocketknife of two blades, one of which was two inches long while the other was one and one-half inches in length. The

State's witnesses were unable to say which blade was used in the cutting.

An extended statement of the defensive testimony is not deemed called for. It is sufficient to say that appellant admitted cutting Hensley with a knife, which, he said was smaller than the one exhibited and relied upon by the State; and that the cutting was in self-defense, when Hensley advanced upon him with, or when he (Hensley) threw, the coca-cola bottle. He denied any intent to kill.

Witnesses corroborated appellant in his theory of self-defense.

It is insisted that the facts are insufficient to authorize a conviction of assault with intent to murder.

The specific intent to kill is an essential element of the offense of assault with intent to murder. Art. 1160, P. C. Such intent may be inferred when the instrument used in committing the assault is a deadly weapon. If the weapon used is not deadly, the intent to kill on the part of the accused may be ascertained from and shown by the surrounding facts and circumstances. If it is possible that death might have been inflicted by the weapon used, and if the accused intended thereby to take life by the use made thereof, the offense of assault with intent to murder is complete, even though the instrument used was not a deadly weapon. Branch's P. C., Sec. 1636; Franklin v. State, 37 Tex. Cr. R. 113, 38 S. W. 802; Basquez v. State, 114 Tex. Cr. R. 602, 26 S. W. (2d) 206; Rose v. State, 123 Tex. Cr. R. 261, 58 S. W. (2d) 526.

The mere fact that an accused does not have the ability to kill does not necessarily show a lack of intent to kill. Hatton v. State, 31 Tex. Cr. R. 586, 21 S. W. 679.

Analyzing the facts of the instant case in the light of the rules stated, we find: the instrument used was not a deadly weapon; the injury inflicted was one not calculated to produce death; appellant fled, refusing to make a further attack on Hensley. If appellant's guilt be shown, it must be from the surrounding facts and circumstances, which evidence, on his part, the intent to kill. Chief among these are the res gestae

statements on his part that "I came here to do it, and I done it," or " I come up here to stab him and I stabbed him."

Appellant insists that in no event can these statements be construed as reflecting an intent on his part to kill, because to do so would, of necessity, enlarge the statements, and would, by construction, include therein something not included in, or not authorized to be deduced from, the language used, but contends that the proper construction to be placed upon the statement is that they show only an intent to cut or to stab. On the other hand ,the State insists that the statements so made reflect an intent to kill because, at the time they were so made, appellant did not know the nature or extent of the injury inflicted but did know that the injury had been inflicted upon that part of the body containing vital organs.

The question thus presented is not without difficulty.

The case of Hunt v. State, 250 S. W. 168, 94 Tex. Cr. R. 155, is in many respects, similar to the instant case. There the instrument used was a small knife. The injuries inflicted were cut wounds upon the throat and neck, which occurred in a fight, and in which the accused expressed an intention to kill. The court held such facts insufficient to authorize the conviction of assault with intent to murder. As supporting the conclusion reached, the court cited, among other cases, that of Fregia v. State, 79 Tex. Cr. R. 334, 185 S. W. 11, wherein the court restated the rule announced in Branch's Criminal Law, Sec. 517, as follows:

"If weapon is not shown to be deadly, or wounds serious, it is not assault to murder, though defendant said he intended to kill; the desire to kill is not proof that weapon was deadly."

The Hunt case, supra, and the rule stated have been followed and approved in Sofge v. State, 111 S. W. (2d) 720, 133 Tex. Cr. R. 409; Dodd v. State, 113 S. W. (2d) 540, 134 Tex. Cr. R. 26; Lozano v. State, 137 S. W. (2d) 1031, 138 Tex. Cr. R. 549; Pleasant v. State, 144 S. W. (2d) 545, 140 Tex. Cr. R. 267.

In the light of the adjudicated cases, the conclusion is reached that appellant's contention that the facts are insufficient to authorize the conviction should be sustained. In reaching this conclusion, we are not unmindful of the fact that this

court has always been hesitant to disturb the verdict of the jury. But, where the evidence fails to measure up to that required by law to show the guilt of the accused, it becomes our duty to say so.

The judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.