### BARNEY R. BLAIR V. THE STATE.

No. 22916. Delivered June 21, 1944.

The opinion states the case.

*Jas. C. Mahan,* of Childress, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Murder is the offense; the punishment, 25 years' confinement in the state penitentiary.

The deceased, Bessie Blair, was the former wife of the appellant. About eight months prior to her death, deceased, at her petition, obtained a divorce from the appellant, and was awarded the custody of their four children.

The State's case depends largely upon the written confession of the appellant, which was admitted in evidence without objection, and from which the following facts are adduced:

Appellant was living at Carthage, Texas. He decided to go to Memphis, Texas, where the deceased and their children lived, for the purpose of obtaining a reconciliation and remarriage.

He contacted deceased at her home about 4:00 P. M. on October 23, 1943, and "I asked her about us getting back together. She began to argue with me. I asked her why she wanted to run around with Jim Franks. I hit her on the head three or four times. She fell down on the floor. I was mad when I hit her. I hit her hard. I *was* thinking anything about killing her I just hit her hard. I thought she was dead when I went out of the house and went over to Mr. Cook's house. - - - - - - - - - - - - I went to Cooks and told them I guessed I had killed Bessie and asked them to call a doctor."

The foregoing portion of the confession was introduced in evidence by the State.

The appellant then introduced from the confession the following:

"She had a hammer in her hand just driving up the loose nails around over the house. She flew mad and ran at me with the hammer. I grabbed her hand and took the hammer away from her and hit her on the head three or four times.

"Bessie did not have anything in her hands to hit me with after I took the hammer away from her. She was not making any effort to get anything else to hit me with."

The State proved, by Mr. and Mrs. Cook, the res gestae statement appellant made to them, to the effect that he had killed the deceased.

The weapon used was referred to as a "claw" hammer weighing one and one-fourth pounds, twelve and one-half inches long, and the head of the hammer one inch in diameter.

The doctor who made the examination of deceased's body described the wounds and the horrible nature thereof as follows: "After the body was removed to my hospital I gave it a thorough examination. She had several wounds on her head. The main wound was on the right side toward the back. There was a hole into the skull and down into the brain about two inches in diameter or something like that. There was considerable brain tissue out in her hair and parts of the skull were down in the brain. And then I found another wound further over to her left and there were two or three in the top of her head. - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - Not counting the wounds around her eye I think there were

three or four wounds on her head besides the big one. In describing the big wound on the right side of her head there was just simply a hole in the skull. There wasn't any scalp there. The bone had been broken in so many small places that there was just a hole there into the brain."

All of this, summed up in a single expression, means nothing more nor less than that appellant virtually and literally beat out the brains of the deceased with a claw hammer.

Appellant did not testify as a witness in his own behalf. His sole defensive theory was that of insanity.

Appellant insists that, under the facts stated, he was entitled to have the jury instructed on the law of aggravated assault. A proper exception was reserved to the charge, in accordance with this contention. It is insisted that aggravated assault was an issue in the case because the weapon used was not, per se, a deadly weapon, and that this fact, taken into consideration with the other facts, was sufficient to raise an issue of a lack of intent to kill upon appellant's part. With this contention we are not in accord. While it may be true that the claw hammer so described was not, per se, a deadly weapon, yet, nevertheless, the mode and manner of its use, the nature and extent of the wounds inflicted therewith, together with all the other facts, show a specific intent to kill.

We think that what was said in Ward v. State, 70 Tex. Cr. R. 393, 159 S. W. 272, a murder case, is here applicable and controlling. In that case, the wounds causing death were inflicted with a knife 8 or 8 1/2 inches long. It was insisted that a charge on aggravated assault was called for. In overruling that contention, this court said: "The circumstances attending this killing, the wounds inflicted, the place they were inflicted, and the way they were inflicted with a knife of the character and kind used. no matter which one of the two was used, certainly would show a design to kill, even if the instrument used should not be held to be per se a deadly weapon, and the court did not err in refusing to charge on aggravated assault - - -." See also Ammann v. State, 165 S. W. (2d) 744, 145 Tex. Cr. R. 34.

The question discussed is the sole question presented by this appeal.

The judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.