Jill DANZIG, Appellant,

v.

The STATE of Texas, Appellee.

No. 52317.

Court of Criminal Appeals of Texas.

Jan. 26, 1977.

Rehearing Denied Feb. 23, 1977.

Terry L. Belt, Austin, for appellant.

Joe Carroll, Dist. Atty. & Troy C. Hurley, Asst. Dist. Atty., Belton, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for aggravated assault by using a deadly weapon. After finding the appellant guilty, the jury assessed her punishment at five years.

Appellant's only contention is that the evidence is insufficient to show that the weapon used was deadly. We agree and reverse.

Omitting the formal parts, the indictment alleges that on May 5, 1975, the appellant

"did then and there use a knife, a deadly weapon, intentionally threaten imminent bodily injury to James A. Naraine." This is sufficient to charge aggravated assault under V.T.C.A., Penal Code, Secs. 22.01(a)(2) and 22.02(a)(3), a third degree felony.

The record reflects that at approximately 2:00 a.m. on May 5, 1975, the complaining witness James Naraine and a companion agreed to have intercourse with the appellant and her friend, both of whom were prostitutes. Naraine's companion gave appellant forty dollars after the four had gone to a trailer. However, the women refused to carry out their part of the agreement and also refused to return the forty dollars. Then, with the aid of a male associate, the women forced Naraine and his companion to leave the trailer. The two men left the trailer and went to a nearby bus station.

While waiting for a bus, Naraine saw the two women walking nearby. He approached appellant and again asked for the return of the forty dollars. Appellant responded by swinging at Naraine. She then pulled out a small penknife with a blade "about three or four inches" long. Naraine grabbed her hands, and, while trying to take the knife away from her, he was stabbed in the back by the appellant's companion. In response, he turned around. He was then stabbed in the arm and over the nose by appellant.

At this time, Officer Andrew Samarripa of the Killeen Police Department drove by the scene of the assault in his patrol car. He testified that he saw the "scuffle" and saw the appellant striking Naraine. However, he testified that he was not able to see any knife in her hand. No knife was found on appellant's person or in the area around the disturbance.[1]

Samarripa also testified that when he approached the scene of the assault Naraine was "bleeding profusely." Naraine testified that eight stitches were required to close his wounds. No medical testimony on the nature or extent of the wounds was offered, although Samarripa testified that the wound on Naraine's nose could have been caused by a ring rather than a knife.

In determining whether the evidence was sufficient to show that the knife was a deadly weapon, as alleged, we turn first to Section 1.07(a)(11) of our new Penal Code, which defines "deadly weapon" as

"(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

What we said on original submission in *Mosley v. State,* 545 S.W.2d 144, 146 (Tex. Cr.App.1977), No. 51,972, delivered October 27, 1976 (opinion on rehearing delivered January 12, 1977), applies also to the case before us:

"The threshold question before us is whether our past decisions have any weight now that 'deadly weapon' has been defined by the Legislature. [footnote omitted] One commentary to the new Penal Code observes:

" 'It would appear that prior Texas law provided *as here,* that an instrument may become a deadly weapon by the manner of its use or capability for use.' [1] Branch's Ann.Tex.Penal Statutes, 3rd Ed., Sec. 1.07(11), p. 27. (Emphasis added [in *Mosley* ]).

"Our prior opinions on the meaning of 'deadly weapon' do and should have instructional significance under the new Penal Code. This approach is particularly appropriate in light of the fact that the Legislature has apparently codified our prior case law definition of the term."

Therefore, we turn to our past decisions for guidance in determining whether the extent of the complainant's injuries is of consequence in deciding whether a knife is

---

1. Samarripa testified that close to the disturbance were several other prostitutes who could have secreted the knives.

a deadly weapon under subsection (B)[2] of V.T.C.A., Penal Code, Sec. 1.07(a)(11).

In *Williams v. State,* 477 S.W.2d 24, 25 (Tex.Cr.App.1972), we held, in a unanimous opinion, that:

"A pocket knife is not per se a 'deadly weapon.' *Barnes v. State,* 172 Tex.Cr.R. 303, 356 S.W.2d 679. However, the mode and manner of its use, *Richards v. State,* 147 Tex.Cr.R. 118, 178 S.W.2d 517, *and the wounds inflicted on the injured party, Reed v. State,* 149 Tex.Cr.R. 208, 192 S.W.2d 890, *are factors in determining the character of the weapon* and the intent to kill." (Emphasis added).

This rule is well established. See, e. g., *Johnson v. State,* 421 S.W.2d 918, 920 (Tex. Cr.App.1968); *Boazman v. State,* 501 S.W.2d 894, 896 (Tex.Cr.App.1973).

■ We therefore hold that under the new Penal Code the wounds inflicted on the injured party are factors to be considered in determining whether a weapon is a deadly weapon under V.T.C.A., Penal Code, Sec. 1.07(a)(11)(B).

We are aware that in determining whether the evidence is sufficient to support the verdict of the jury the rule is that this Court will not substitute its findings for those of the jury, *provided* there is sufficient evidence to support the jury's verdict. See, e. g., *Ammann v. State,* 145 Tex.Cr.R. 34, 165 S.W.2d 744 (1942).

In *Ammann,* as in this case, the issue was whether the knife used in the assault was a deadly weapon. In holding that evidence was insufficient, the Court said:

"We are not unmindful of the fact that this court has always been hesitant to disturb the verdict of the jury. But, where the evidence fails to measure up to that required by law to show the guilt of the accused it becomes our duty to say so." Id., at 38–39, 165 S.W.2d, at 746.

The facts and holding of *Ammann* are instructive in our consideration of this case. In *Ammann* the complainant and defendant had had a dispute at a cafe on the night before the alleged assault. The next morning the defendant entered the cafe and, using a small pocketknife, stabbed the complainant. He then ran from the building and was heard to say, "I came over here to do it, and I done it," or something very similar.

The complainant in *Ammann* was in the hospital for five days after the stabbing. The attending physician testified that the wound was eight or ten inches long, extending from the eighth rib on the left side to a point approximately three inches above the navel. The wound did not enter the abdominal cavity, and the doctor testified that he did not believe it would have brought about the complainant's death, even if it had not been sewn up.

"At no time did the doctor express the opinion that the wound was dangerous or that death was likely to ensue therefrom." Id., at 36, 165 S.W.2d, at 745. The defendant admitted the stabbing but claimed it was done in self-defense.

In reversing, the Court in *Ammann* relied heavily upon its previous reversal in *Hunt v. State,* 94 Tex.Cr.R. 155, 250 S.W. 168 (1923). In *Hunt* the complaining witness was the defendant's wife. Both parties went to the hospital with knife wounds after the alleged assault. The State presented testimony that the defendant's wounds were self-inflicted and that during the alleged assault the defendant expressed an intent to kill.

The complainant's wounds were around her throat and caused her to be hospitalized for about a week. The doctor who examined the complainant stated that the wound did not extend far enough or go deep enough to be fatal, but, if it had gone a little deeper, it "would have been likely to produce death." Id., at 156, 250 S.W. at 168.

The defendant claimed self-defense and denied expressing an intent to kill at the time of the assault.

---

2. We are here concerned only with subsection (B) because, as the State concedes, a knife is not a deadly weapon per se, as defined by subsection (A) of Section 1.07(a)(11). See *Mosely v. State,* supra.

In the present case, as in *Ammann* and *Hunt*, the weapon was not a deadly weapon per se, and the wounds, although *near* vital areas, were not shown, by expert testimony or otherwise, to have been likely to result in death or serious bodily injury. See also *Fregia v. State*, 79 Tex.Cr.R. 334, 185 S.W. 11 (1916), and the other cases cited in *Ammann* and *Hunt*. In both *Ammann* and *Hunt*, the Court emphasized the lack of expert testimony to show that the wounds were dangerous or that they were likely to result in death.

Similarly, our recent cases have also emphasized the importance of some kind of opinion testimony—generally expert testimony—in such cases. See *Washington v. State*, 471 S.W.2d 409, 410 (Tex.Cr.App. 1971); *Abels v. State*, 489 S.W.2d 910, 911 (Tex.Cr.App.1973); *Marrero v. State*, 500 S.W.2d 818, 819 (Tex.Cr.App.1973); *McElroy v. State*, 528 S.W.2d 831, 834 (Tex.Cr. App.1975).

What these cases stand for is the basic rule that the State must prove every element of its case beyond a reasonable doubt, and that where the deadly nature of the weapon is an issue the jury will not be allowed to infer deadliness solely from superficial wounds, even though those wounds may have required suturing; thus, the State must provide the trier of fact with some evidence, normally through expert testimony, that the weapon was used or intended to be used in such a way that it was "capable of causing death or serious bodily injury." V.T.C.A., Penal Code, Sec. 1.07(a)(11)(B). See also *Boazman v. State*, supra, 501 S.W.2d at 896.

In light of the authorities cited and the evidence presented at trial, we conclude that the evidence is insufficient to show that the weapon was deadly, as alleged in the indictment.[3]

The judgment is reversed and the cause remanded.

**3.** To the extent that *Gillingham v. State*, 167 Tex.Cr.R. 116, 318 S.W.2d 659 (1958) provides authority to the contrary, it is overruled in

DOUGLAS, Judge, dissenting.

The majority reverses and holds that the evidence is insufficient to support the conviction. The indictment, omitting the formal parts, alleged that she "did then and there use a knife, a deadly weapon, intentionally threaten imminent bodily injury to James A. Naraine."

The evidence shows that at approximately 3:00 o'clock in the morning on a street in Killeen on May 5, 1975, appellant and Patricia Williams became involved in an altercation with the complaining witness James A. Naraine. Naraine suffered stab wounds in the back, left arm and on his nose near the eye. He was treated at Darnell Army Hospital where eight stitches, including two on the nose, were required to close his wounds. Naraine testified that both appellant and Patricia Williams stabbed him with knives. He described them as folding "penknives" having blades of approximately three to four inches long.

The indictment charges by use of a deadly weapon. The extent of the complaining witness' injuries are of no consequence. The threat of imminent bodily injury with a deadly weapon is all that is required.

Appellant relies on *Henderson v. State*, 55 Tex.Cr.R. 170, 115 S.W. 588 (1909), which held that an ordinary pocketknife with a three-inch blade is not per se a "deadly weapon." No evidence was introduced in *Henderson* to show the manner in which the knife was used and the conviction was reversed.

Although a knife is not a deadly weapon per se, it can qualify as such through the manner of its use, its size and shape and its capacity to produce death or serious bodily injury. *McElroy v. State*, 528 S.W.2d 831 (Tex.Cr.App.1975); *Ables v. State*, 489 S.W.2d 910 (Tex.Cr.App.1973); *Gillingham v. State*, 167 Tex.Cr.R. 116, 318 S.W.2d 659 (1958).

The court, in its charge, required the jury to find that the assault was made with a

favor of the sounder reasoning of *Ammann v. State*, supra, and the long line of authorities on which its holding is based.

deadly weapon, defining such term as a weapon which from the manner used is calculated or likely to produce death or serious bodily injury.

The jury having found that the knife used was, from the manner of its use, calculated or likely to produce death or serious bodily injury under the evidence mentioned above, their verdict should not be disturbed. In the *Gillingham* case, the Court held that a switchblade knife with a blade 3¼ inches in length and ½ inch in width would come within the definition of a deadly weapon when used to slash in the vicinity of the face and neck. The Court wrote that whether a knife is to be considered a deadly weapon depends upon its size and the manner of its use and upon its size, shape and capacity to produce death and that, when the use made of the knife produced neither death nor serious bodily injury, the test then is whether the manner in which it was used was calculated to do either. The evidence in the record before us is sufficient to show that appellant used the knife in a manner which was calculated or likely to produce death or serious bodily injury. The jury was the trier of the facts. It was the jury's prerogative to determine the credibility of the witnesses and the weight to be given to their testimony. This Court is not at liberty to substitute its findings for those of the jury. *Ferrell v. State*, 464 S.W.2d 851 (Tex.Cr.App.1971).

It does not take a doctor's testimony to prove that the knife wielded as it was in this case could cause death.

This Court has held that an automobile is not a deadly weapon per se but, that through its manner of use, it could be one. When someone tries to run over another with an automobile would the majority require proof from an expert that an automobile is a deadly weapon? The majority is not giving jurors credit for knowing facts that are of common knowledge.

The majority has to overrule the well reasoned *Gillingham* case to reach its erroneous result.

No reversible error having been shown, the judgment should be affirmed.