In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-22-00225-CR

JACOB HARRIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. 21-36913

## MEMORANDUM OPINION

A grand jury indicted Appellant Jacob Harris (a/k/a Jacob R. Harris or Jacob Ray Harris) for aggravated assault, and the indictment alleged that Harris used a deadly weapon—a car seat—in committing the offense. *See* Tex. Penal Code Ann. § 22.02. Appellant waived his right to a jury trial and pleaded guilty. The trial court found Harris guilty and found that Harris used a deadly weapon in committing the offense charged. After a hearing on punishment, the trial court sentenced Harris to eight years of confinement. Harris timely appealed, and in four issues, he challenges

his judgment of conviction. In his first two issues, he challenges the evidence to support the deadly weapon finding, and in his other two issues, he argues that the trial court erred by allowing him to plead guilty. Appellant asks this Court to reverse and remand for a new trial. In the alternative, Appellant asks that this Court reform the judgment by deleting the deadly weapon finding and remand for resentencing. For the reasons explained below, we affirm.

Background Information[1]

Harris was indicted in April 2021, and trial began in May 2022. The record reflects that Harris was represented at all stages of the proceeding by retained counsel. After voir dire and selection of the jury, and outside the presence of the jury, Harris stated, "I'm getting me a new attorney. So, we need to reschedule or something." The trial court responded, "we're not stalling because of you. We are moving forward. You can represent yourself, if you wish[.]" The trial court also told Harris that, if Harris wanted to represent himself, the court would allow his retained counsel to be present on standby. The following exchange then occurred:

The Court: . . . Do you understand what I've said, sir?

The Defendant: No.

The Court: I spoke -- do you speak the English language? I'm not being silly, but do you understand[,] did you understand the words I said to you?

---

[1] We limit our discussion about the proceedings in the trial court to information and evidence pertinent to the issues on appeal.

2

The Defendant: No.

The Court: Do you speak any language other than English?

The Defendant: (No response).

The Court: We are in recess, and please note that the defendant refuses to answer.

After a break in the proceedings, Harris stated on the record to the court that he could not represent himself and he needed another attorney. The trial court told Harris, "You can certainly hire another lawyer but we're not going to interrupt the flow of the proceedings to work on your timetable[.]" Harris also stated, "I wasn't informed about the process or none of this. I wasn't informed about the process. He told me we [were] going to go, and I don't feel like I had enough of going through a trial." The trial court confirmed on the record that Harris's retained counsel was prepared to move forward for trial.

At that point, the trial court noticed that Harris had family members present and the trial court asked Harris if he wanted to speak with his family. Harris replied, "Yes." During a break, Harris spoke with his family members and with his retained counsel. When trial resumed, the following exchange occurred:

The Court: . . . [B]efore we broke for lunch, we had selected a jury and then it was Mr. Harris who made a statement that he wished -- so it's clear on the record and correct me if I'm wrong, anybody -- that he wished to replace his attorney [] and the Court inquired and I was a little confused as to whether he wanted a new lawyer or wanted to represent himself and he made it clear that he didn't wish to represent himself. That wasn't [] his plan. He wanted a lawyer to replace [his retained

3

counsel]. And so, the law is pretty clear and this is Andrew Perez versus Texas, 2015, and it is clear this was a case decision where on the day of trial, the defense lawyer announced not ready because his client, the defendant, told him the client desired to terminate his employment. And the Court looked into that and finally deemed that a defendant may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel. When competent counsel [] is available and fully prepared to represent the defendant, a trial court does not abuse its discretion by denying an untimely request for continuance based upon the availability of the defendant's counsel of choice.

The defendant has been -- this case has been set on the trial docket since June of last year and [defense counsel] has been in this case since December of last year and there has been no representation that [defense counsel] had not received discovery and was not prepared to go forward with trial. The Court decided in its legal decision that the trial court reasonably could have concluded that the intent -- the attempt to terminate his lawyer at the day of trial was an effort to delay trial and that the defendant in that case was manipulating his right to counsel when he waited until the day of trial to voice dissatisfaction.

They went on to rule that in this case, that the trial court did not abuse its discretion by disallowing the defendant on the morning of trial -- that was on the morning of trial. Here, we've already picked a jury; and it was at noon that the defendant expressed his desire. So, the Court ruled there that there was no 6th Amendment or other violation of law for the Court to overrule and deny the defendant's request. And I've allowed Mr. Harris to -- and we broke for lunch and it's after 2[] o'clock and I've allowed him to reflect and speak to his family.

And at this moment, Mr. Harris, it's my understanding that you wish to continue with [defense counsel's] representation of you and you're intending to enter a plea of guilty in this case and waive a jury trial? Is that what I understand?

The Defendant: Uh-huh, yeah.

The Court: . . . I have before me some plea papers and does the defendant waive a formal reading of this indictment and arraignment here . . . and can we proceed in summary?

Defense counsel: You may and you can, Your Honor.

4

At that point, the trial court informed Harris that he was charged with the second-degree felony of aggravated assault with the use of a deadly weapon, namely a car seat. When asked whether he understood what he was charged with, Harris replied, "Yes, sir." The trial court told Harris that, if convicted, punishment would be not more than twenty years or less than two years in prison and a fine not to exceed $10,000, and Harris again replied that he understood. When asked if he was knowingly and voluntarily waiving his right to a jury trial and leaving sentencing to the court, Harris, replied, "Yes." The court told Harris that he had the right to appeal, and Harris said, "yes," that he understood. Harris then pleaded guilty, and agreed he was pleading guilty on his own free will and because he was guilty. He also agreed that he had signed the written plea admonishments wherein he declared that he is mentally competent, that he was entering his guilty plea freely and voluntarily, that he was aware of the consequences of pleading guilty, that the indictment had been read to him, that he was waiving his right to a jury trial, and that he was satisfied with his attorney's representation, and Harris agreed this was true. The "Written Plea Admonishments" are included in the clerk's record. The trial court asked Harris whether he understood that there was enough evidence for the court to find Harris guilty beyond a reasonable doubt, and Harris replied, "Yes, sir." The trial court then found Harris guilty beyond a reasonable doubt and stated it would wait until a presentencing report was available to finalize the finding.

Harris then told the court, "I want you to look into, like fabrication of the story[]" and "overexaggerating-type stuff[]" by the complainant. The trial court stated it would hear the evidence, that it would release the jury and proceed with a hearing on punishment. Before the punishment hearing began, the trial court stated, "the Court has found that the defendant has voluntarily, knowingly and intelligently waived a jury trial, entered a plea of guilty before the Court and has elected to have the Court decide punishment in this case."

During the punishment hearing, a neighbor and friend of Harris testified, and Harris's girlfriend, J.G.,[2] also testified. The neighbor testified that she witnessed an argument between Harris and J.G., and she saw Harris pick up an infant car seat and hit J.G. with the car seat. The neighbor testified that J.G. passed out twice. The neighbor also testified that Harris slammed J.G. on the ground. According to the neighbor, a police officer intervened to stop the fight, and an ambulance arrived at the scene. On cross-examination, the neighbor agreed that J.G. was pointing her umbrella at Harris and jabbed or poked him with the umbrella.

Harris's girlfriend[3], J.G., testified that on the day of the incident, she and Harris were living together, and they had a verbal disagreement. After J.G. told

---

[2] We refer to the victim by her initials to conceal her identity. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[3] J.G. testified she is also Harris's ex-wife.

6

Harris to leave, he refused to leave and threatened to break the windows. He then grabbed the car seat and broke a window and started hitting J.G. with the car seat. J.G. testified that she went to the hospital for injuries she received from Harris hitting her with the car seat, which included a fractured wrist, an injury to her leg, a "bust[ed] lip[,]" bruises to her face, and she had blood coming from her mouth and nose. She also agreed that Harris "body slammed" her. J.G. agreed that, during her argument with Harris, she used an umbrella to defend herself and, at one point, she picked up a crutch. She agreed that, during the struggle, she also had chest pains because of asthma.

After the State rested, Harris testified. Harris agreed that he took a car seat and used it to break a window and that he hit J.G. with the car seat. On cross-examination, Harris agreed he was accepting responsibility for assaulting J.G. with a car seat, he had pleaded guilty, and he was not blaming anyone else. He agreed he caused damage to J.G.'s face and fractured her wrist during the incident. He also agreed he broke a window. Harris told the court that the fight with J.G. was his fault.

The parties returned to the trial court for sentencing. At the sentencing hearing the trial court asked the parties if they had any objections to the presentence report which had been prepared, and the defendant asked about certain alleged offenses as well as whether the allegations on charges that were not prosecuted. The defense attorney reviewed the testimony from the prior hearing noting that Harris claimed

7

the argument with the "complaining witness" started when he was asleep, and the complainant tried to wake him up and it ended up in the argument that lead to Harris hitting the complainant with a car seat. The defense also emphasized that Harris had been a "good father" to his children, and the defense asked the trial court to consider placing Harris on probation. The prosecution reminded the trial court Harris previously stated he did not want probation because he had not done anything, and he did not plead guilty until after the jury was selected. Harris interjected at the sentencing hearing as follows:

> The Defendant: I'm not aggressive. I was asleep when it happened. I was attacked when I was asleep. So, I wasn't the aggressor in the case.
>
> The Court: The defendant pleaded guilty earlier at a hearing, and it was unagreed. The defendant pleaded guilty voluntarily, knowingly, intelligently and the presentence report is subsequently made and the parties can make their arguments and they are certainly not locked into anything, especially when a presentence report has not been concluded. The full range of punishment is what the Court is going to consider, the full range, including deferred or unadjudicated probation. So, the parties are allowed to make their own statements and, also, if there was a deal that was binding, nobody brought that up to this Court like it should have been or this wouldn't be unagreed. Come on.
> . . .
> The Court: All right. Mr. Harris, what else with you like to say?
>
> The Defendant: I mean, I was asleep when this all happened; and it happened while I was under duress. I was asleep. I didn't know what was going on. I was attacked while I was asleep. I tried to go somewhere else, and I was pursued. I feel like under the Texas Constitution, I'm the victim in the case. I shouldn't even -- I accept what happened; but at the same time, what was I supposed to do? I was attacked while I was asleep. That's like being under duress, and then a witness even said that

8

I was attacked while I was asleep. It was supposed to be the prosecutor's witness that said I was attacked while I was asleep.

The Court: Isn't that your signature? We went over that. Isn't that your signature?

The Defendant: Who, me?

The Court: Yes. You acknowledged it was your signature.

The Defendant: Uh-huh.

The Court: And you stated here, it says, "I am mentally competent to enter my plea; the indictment has been read to me or I've read it; I am guilty of the offense charged and all lesser included offenses. I am doing this voluntarily, knowingly, intelligently," and it says, "So help me God, all of this is true." You didn't lie under oath, did you?

The Defendant: No, I didn't at all.

The Court: Did you commit perjury when you did that?

The Defendant: I don't know what that is, sir.

The Court: Lying under oath.

The Defendant: Under the circumstances, I mean –

The Court: I found that you made your decision consciously.

The Defendant: I mean, I was just trying to make the best decision, I feel like. I [have] never been through [anything] like this before.

The Court: Anything else?

The Defendant: Under the circumstances, all my people came and told me what they told me. I was just trying to get out. I mean, I don't know.

The Court: All right. Anything else anybody wants to add?

9

[Prosecutor]: No, Your Honor.

The Court: If not, then, I'm going to –

The Defendant: I would withdraw.

[Defense counsel]: I couldn't hear you.

The Court: I'm going to find as follows: I'm going [to] find Mr. Harris has pleaded guilty to this second degree felony voluntarily, knowingly, intelligently. He understood the consequences of pleading guilty. There was sufficient evidence supporting his guilty plea by his sworn document stating he was guilty made at a time when the jury was impaneled, ready to go forward and then the defendant stopped the trial and urges the Court to accept his plea of guilty and this is an unagreed plea. I find the defendant guilty beyond a reasonable doubt based upon his choices and his voluntary plea and based upon the presentence report that has been admitted into evidence and the arguments made. The defendant is hereby found guilty of the second degree felony and is sentenced to confinement in the Institutional Division of the Texas Department of Criminal Justice to serve a term of 8 years.

The Defendant: How long?

The Court: 8 years. An affirmative finding that a deadly weapon –

The Defendant: Judge, under the Texas Constitution, I'm the victim in this case.

The Court: You just interrupted the Court in the middle of its articulation. You may speak in a minute. There is an affirmative finding that a deadly weapon, namely, a car seat, as indicted, was used in the commission of this crime; and it will be reflected on the judgment. Anything else you want to say? You have a right to appeal this.

The Defendant: Well, can I withdraw my plea?

The Court: No, sir. No, sir, you can't withdraw it. After a jury was here, we seated a jury, we were ready. You insisted –

The Defendant: I'm not understanding. How am I -- how am I the aggressor? In any aggravated assault case, the aggressor is the one that was supposed to be tried. How was I the aggressor when I was asleep?

The Court: This hearing is finished. That is all. You're found guilty an[d] sentenced as a felon.

The Defendant: Yeah, I know.

The Court: That's the way the rules work in the United States.

The Defendant: My rules don't work like that.

The Court: They don't work on your rules. Sorry.

Harris timely filed a notice of appeal.

## Guilty Plea

We first address Appellant's third and fourth issues, in which he argues that the trial court committed reversible error by allowing him to plead guilty. According to Appellant, he was denied his Sixth Amendment right to counsel and a fair trial when the trial court allowed him to plead guilty after the court denied his request for new counsel. Appellant further argues that he became indigent after he retained his trial counsel, and "the trial Court committed reversible error in not providing Appellant with an attorney during his trial." Appellant asserts that he pleaded guilty "simply because the Court would not appoint an attorney for him, and he was dissatisfied with [his trial counsel]." Appellant further alleges he "is mentally impaired, and [], at least somewhat mentally retarded[,]" and he explains that, despite multiple attempts, he could not complete high school. Appellant argues that

11

his guilty plea was "incompetent" because all plea bargain offers had been withdrawn at the time, and there was ample time for the trial court to order a mental evaluation. According to Appellant, he did not understand that he was also charged with the use of a deadly weapon.

Appellant argues he is "mentally impaired" and suggests that the trial court could have ordered a mental examination, but he does not cite to any part of the record at the trial or in the sentencing to support his contention that the trial court should have ordered a competency examination based on the record in this case, nor does he cite to any case law supporting his contention that his guilty plea was "incompetent" because all plea bargain offers had been withdrawn at the time of his plea.[4] *See* Tex. R. App. P. 38.1(i). Therefore, we consider these points inadequately briefed. *See id.*; *Gonzalez v. State*, 616 S.W.3d 585, 587 (Tex. Crim. App. 2020).[5]

Next, we examine Harris's argument that the trial court erred by denying Harris's request on the day of trial for a new attorney. "A defendant may not use his

---

[4] For the standards and framework for competency to stand trial and ordering a competency examination and hearing, see Tex. Code Crim. Proc. Ann. arts. 46B.003-.005; *Boyett v. State*, 545 S.W.3d 556 (Tex. Crim. App. 2018); and *Turner v. State*, 422 S.W.3d 676 (Tex. Crim. App. 2013).

[5] The record reflects Harris executed "Written Plea Admonishments," where Appellant agreed that he was "mentally competent and [his] plea is freely and voluntarily made." Harris does not allege or contend that he cannot read. And, we note that Harris was fully engaged in the sentencing hearing, asked questions, and made arguments about not being the "aggressor" in the argument, and neither Harris or his attorney ever suggested Harris was mentally challenged or incompetent before or during either the trial where he pleaded guilty, or at the sentencing hearing.

right to counsel to manipulate the court or to delay his trial." *Culverhouse v. State*, 755 S.W.2d 856, 861 (Tex. Crim. App. 1988); *see also Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976) (citing *Thompson v. State*, 447 S.W.2d 920 (Tex. Crim. App. 1969); *Estrada v. State*, 406 S.W.2d 448 (Tex. Crim. App. 1966)); *Burks v. State*, 227 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Green v. State*, 840 S.W.2d 394, 408 (Tex. Crim. App. 1992)). In the interest of minimizing disruptions and maintaining continuity at trial, "an accused may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel." *Webb*, 533 S.W.2d at 784. A trial court has discretion to grant or deny a request to change counsel on the morning of trial. *Medley v. State*, 47 S.W.3d 17, 23 (Tex. App.—Amarillo 2000, pet. ref'd) (citing *United States v. Magee*, 741 F.2d 93, 95 (5th Cir. 1984)). A trial court does not abuse its discretion by denying a request for court-appointed counsel if the trial court determines that the defendant is manipulating the right to counsel for purposes of delay. *See Davis v. State*, No. 09-15-00450-CR, 2017 Tex. App. LEXIS 4226, at **7-11 (Tex. App.—Beaumont May 10, 2017, no pet.) (mem. op., not designated for publication); *Lewis v. State*, No. 02-12-00246-CR, 2014 Tex. App. LEXIS 1405, at *9 (Tex. App.—Fort Worth Feb. 6, 2014, pet. dism'd) (mem. op., not designated for publication); *Glover v. State*, No. 09-06-325-CR, 2008 Tex. App. LEXIS 7321,

13

at \*\*18-20 (Tex. App.—Beaumont Aug. 27, 2008, no pet.) (mem. op., not designated for publication).

The record reflects that Harris asked for a new attorney after voir dire was completed. The trial court stated that the law did not permit a defendant to delay trial and change counsel in the middle of trial and that Harris had not articulated any reason why Harris's retained counsel should be replaced. The trial court also told Harris, "we're not stalling because of you. We are moving forward." The clerk's record includes an "Appointment of Counsel" form signed by Harris on May 1, 2022, in which Harris stated that he did not want a court-appointed attorney at that time. A handwritten note on the form indicated that defense counsel was hired in December 2021, and the form is signed by the presiding judge. Appellant's brief fails to provide any factual basis to explain why Harris could not proceed with his retained attorney and we find no explanation in the record. *See* Tex. R. App. P. 38.1(i) (arguments in an appellate brief must be supported by citations to the record and to authority).

On this record, we cannot say the trial court abused its discretion in denying Harris's request for a new attorney that he made during the first day of trial, and we find no Sixth Amendment infirmity. *See Webb*, 533 S.W.2d at 784; *Davis*, 2017 Tex. App. LEXIS 4226, at \*\*7-11; *Medley*, 47 S.W.3d at 23.

Finally, we consider Harris's complaint that his guilty plea was not voluntary. "No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary." Tex. Code Crim. Proc. Ann. art. 26.13(b). When we review the voluntariness of a plea, we examine the record as a whole. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (en banc) (per curiam); *Doubout v. State*, 388 S.W.3d 863, 865 (Tex. App.–Houston [14th Dist.] 2012, no pet.). When the record shows that the trial court gave a proper admonishment, there is a prima facie showing of a knowing and voluntary plea of guilty. *Martinez*, 981 S.W.2d at 197; *Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985); *Ex parte Arjona*, 402 S.W.3d 312, 318 (Tex. App.–Beaumont 2013, no pet.) ("The admonishment is a prima facie showing that the guilty plea was knowing and voluntary."); *Doubout*, 388 S.W.3d at 865. The burden then shifts to the defendant to show that he pleaded guilty without understanding the consequences of his plea and thereby suffered harm. *See Martinez*, 981 S.W.2d at 197 ("A finding that a defendant was duly admonished creates a prima facie showing that a guilty plea was entered knowingly and voluntarily[]" and "the burden shifts to the defendant to demonstrate that he did not fully understand the consequences of his plea such that he suffered harm."); *see also* Tex. Code Crim. Proc. Ann. art. 26.13(c). Once a defendant has pleaded guilty and attested to the voluntary nature of his plea, he bears a heavy burden at a subsequent hearing to

15

demonstrate a lack of voluntariness. *Ybarra v. State*, 93 S.W.3d 922, 925 (Tex. App.–Corpus Christi 2002, no pet.).

In this case, the reporter's record from the plea hearing reflects that the trial court informed Harris of his options regarding entering a plea and the consequences. Harris testified at the hearing that he did not want a jury trial, he pleaded guilty to the crime charged, he pleaded guilty of his own free choice, and he pleaded guilty because he was guilty. He further testified that he understood the range of punishment for the crime to which he pleaded guilty, and he pleaded guilty to the allegations in the indictment. During the hearing on punishment, Harris testified that he hit J.G. with a car seat and injured her, that he was responsible, and that he blamed no one else. The "Written Plea Admonishments" filed in the clerk's record and signed by Harris, include a statement that "the defendant appears legally competent to stand trial; that all of the defendant's statements were freely and voluntarily made; and that the defendant's plea in this case was freely and voluntarily entered." The Written Plea Admonishments are then signed by Harris's defense counsel at trial, the prosecutor, and the trial judge approved the waivers and certify that Harris's plea was entered "freely and voluntarily." The record reflects no evidence to substantiate Appellant's claim that he was misled by his attorney or that his plea was not voluntary. In addition, the record reflects that Appellant chose not to represent himself and he was represented by counsel throughout trial.

16

The trial court's admonishments are prima facie evidence that Harris's guilty plea was entered knowingly and voluntarily. *See Martinez*, 981 S.W.2d at 197. The burden then shifted to Harris to demonstrate that he did not fully understand the consequences of his plea such that he suffered harm. *See id.* On this record, Harris did not meet his burden to demonstrate a lack of voluntariness. *See id.*; *Ybarra*, 93 S.W.3d at 925. We overrule Appellant's third and fourth issues.

Deadly Weapon Finding

Appellant challenges the deadly weapon finding in his first and second issues on appeal. According to Appellant, the trial court abused its discretion in finding that he used an infant car seat as a deadly weapon because "it was predominantly used in self-defense," and the evidence was legally insufficient "that the [] car seat or its manner of use caused either serious bodily injury or a threat of death." Appellant also argues that a car seat is not a deadly weapon because it is lightweight and lacks sharp edges. Appellant argues that a factfinder may not "infer deadliness solely from the infliction of superficial wounds[,]" citing to *Danzig v. State*, 546 S.W.2d 299, 302 (Tex. Crim. App. 1977). Appellant also suggests that he was entitled to a jury charge[6] or resentencing on a lesser offense, such as reckless conduct.

In this case, the indictment read, in relevant part,

---

[6] The record confirms he waived a jury trial, he entered a plea, and Harris elected punishment to be made at a bench trial.

> . . . Jacob Harris . . . did then and there intentionally and knowingly and recklessly cause bodily injury to [J.G.], hereafter styled the Complainant, by the use of a deadly weapon, namely, a car seat, that in the manner of its use and intended use is capable of causing serious bodily injury and death, by striking [J.G.] about the head and body with said car seat[.]

Here, the language of the indictment provided Harris with sufficient notice that the State sought a deadly weapon finding.[7] *See Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005) (en banc) ("The language in the indictment may provide sufficient notice if it alleges use of a deadly weapon.").

"The entry of a valid plea of guilty has the effect of admitting all material facts alleged in the formal criminal charge [and] waives all nonjurisdictional defenses including [a] contention as to the insufficiency of the evidence." *Ex parte Williams*, 703 S.W.2d 674, 682 (Tex. Crim. App. 1986) (en banc); *see also Ex parte Munoz*, 666 S.W.3d 529, 530 (Tex. Crim. App. 2023) (Slaughter, J., concurring); *Keller v. State*, 125 S.W.3d 600, 604-05 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd).

Harris pleaded guilty as charged in the indictment, and we have already concluded that Harris did not meet his burden to demonstrate that his guilty plea was not voluntary. Harris swore to and signed "Written Plea Admonishments" that included "Stipulations, Waivers & Judicial Admission," in which Harris agreed that he had read the charging instrument, his attorney had explained it to him, and Harris

---

[7] Appellant has not alleged that there was a defect in the indictment.

18

"committed each and every element alleged." The indictment alleged the use of a car seat as a deadly weapon. Therefore, Harris's guilty plea was an admission that he used the car seat as a deadly weapon. *See Munoz*, 666 S.W.3d at 530 (explaining that, because the defendant had pleaded guilty to the charged offense and stipulated to the deadly weapon finding, the guilty plea foreclosed his ability to challenge the legal sufficiency of the deadly weapon finding).

In addition, during the punishment phase, Harris testified that he assaulted J.G. with a car seat, he accepted responsibility for the assault, and he was not blaming anyone else. The record reflects that the case was not a plea bargain case, and Appellant does not suggest he had an agreement with the State that his guilty plea did not include pleading guilty to the use of a deadly weapon. Therefore, in pleading guilty "as charged in the indictment," Appellant waived his complaint about the deadly weapon finding, and we overrule Appellant's first and second issues. *See id.*; *Williams*, 703 S.W.2d at 682; *Keller*, 125 S.W.3d at 604-05.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on June 22, 2023
Opinion Delivered September 20, 2023
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.