COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 LEON
 HEMPHILL,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-03-00054-CR
  
 Appeal from the
  
 142nd District Court
  
 of Midland County, Texas
  
 (TC#CR27752)
 
 




 

MEMORANDUM
OPINION

Leon Hemphill was convicted by a jury
of aggravated assault by using a deadly weapon--namely, his foot, hand, knee,
elbow, or an unknown object.  The court
sentenced him to eleven years= imprisonment.  In his
sole issue on appeal, Hemphill argues that the evidence is legally insufficient
to establish that he used or exhibited his foot, hand, knee, elbow, or an
unknown object as a deadly weapon.  We
affirm.

Factual and
Procedural Background








It is undisputed that Hemphill
assaulted his live-in girlfriend, Sophia Molloy, on Saturday, June 22, 2002,
and that Molloy spent two and a half months at a battered women=s shelter shortly after the
assault.  Molloy made an oral statement
to the police two days after the assault and a handwritten statement while she
was at the battered women=s shelter.  By the time
of trial, Molloy and Hemphill had reconciled. 
During her trial testimony, Molloy recanted much of the information in
her statements.  Although the statements
were not admitted into evidence, Molloy admitted that she said most of the
things that were in the statements.  The
prosecutor also had Molloy read portions of the statements from the witness
stand.

Molloy testified that she went to buy
a car on the morning in question.  When
she returned home to get the title to her old car, she and Hemphill
argued.  In her written statement, she
said that Hemphill began beating her in the head with a rolled up
newspaper.  In her trial testimony,
Molloy stated that he did not hit her with the newspaper.  Instead, she testified that she
punched Hemphill in the stomach.  Her
statement did not contain this information.

Molloy testified that she retrieved
the title, went back to the car dealership, returned home, and began getting
ready for work.  She was angry with
Hemphill because she had just found out that he was Acheating@ on her.  They starting yelling at each other, she
started hitting him and pulling his hair, and Aout of self-defense@ Hemphill started hitting her
back.  None of this information was
included in her statements.  In one of
her statements, she said:








Once I
got the title in my hands I ran out the door. 
And as I headed down the stairs, he followed me.  He grabbed my neck, started squeezing as hard
as he could.  I couldn=t scream or breathe. 
I tried so hard to, but he was pushing so hard on my larynx that no air
or sound came out.  He drug me up the
stairs by my head, the back of my feet hitting each stair.  He finally let go and drug me by my wrist
back into the house.

 

Similarly, in another statement she said that Hemphill
grabbed her by the neck with his hands and 

I was
trying to scream, no sound was coming out because he had a choke hold on
me.  I could not make any sound, I couldn=t get any air. 
I mean, I thought I was going to die right there on the stairs.  And he pulled me up the stairs like that, by
my head.   

 

At trial, Molloy identified pictures
that were taken the following Monday and that showed bruises on her chin, neck,
legs, and arm.  But she had a new
explanation for how she got the bruises. 
She testified that Hemphill decided to move out and she fell down the
stairs as she was helping him take his clothes to the car.  While Molloy was kicking and screaming,
Hemphill tried to pull her back up the stairs to see if she was alright.  Molloy testified that she did not believe
Hemphill meant to grab her by the neck.

They eventually drove to Hemphill=s uncle=s apartment, arguing along the
way.  In her statements, Molloy said that
Hemphill pulled a knife out and threatened to stab her so they would wreck and
die.  When they were inside the uncle=s apartment, Hemphill pointed a
shotgun at her and threatened to kill her, and then forced her back into the
car with the gun.  At trial, Molloy
claimed that none of the information regarding the knife and the gun was true.








Molloy testified that they returned
to their apartment, and the fight resumed when she pushed Hemphill.  This information was not included in her
statements.  Hemphill then Akneed@ her, causing her to hit a wall.  She identified a picture showing a three-inch
bruise on her shoulder that resulted from her hitting the wall, as well as
pictures of injuries to her vaginal area caused when Hemphill kneed her.  She testified that the pain was A[o]ne of the worst pains@ she had ever felt and that there was
Ablood everywhere.@  
Molloy estimated that she lost one to two cups of blood.  Blood was in the hall, where he hit her, and
there was a trail of blood into the bathroom and more blood in the bathtub.

Although it was painful to walk,
Molloy got ready and went to work.  A
co-worker noticed her bruises and called the police, against Molloy=s wishes.  At trial, she testified that she did not want
to call the police because she had started the fight.  She admitted that at the time of the incident
she said that she was afraid for her life because Hemphill threatened to kill
her, but she testified that he did not really threaten her and she was not
really afraid.

When Molloy went back to work the
following Monday a co-worker told her that the police were on the way, and she
thought Athis is my opportunity to get out of
this relationship.@  Although the police
report stated that Hemphill hit her several times with his fist and kicked her
several times in the vagina, Molloy denied saying that to the officers.  She testified that she only told them that he
kneed her one time and hit her in the face one time.  She admitted telling an official, AHe hit me with his hands, his hands
are bad.  I mean, they=re so powerful.@ 
On the officers= advice, she went to the hospital and then to the battered
women=s shelter.








On cross-examination, Molloy
testified that her bruises and the wounds to her vaginal area had healed
completely.  Even before she was
completely healed, she was able to Ause the restroom@ normally.  She never lost the functioning of any part of
her body, and she has no disfigurement. 
Molloy stated that when Hemphill kneed her she was hitting him and she
was out of control.  Molloy also
testified that she is five-feet-two-inches tall and weighs about 105
pounds.  Hemphill is about
five-feet-eight-inches tall and weighs about 200 pounds.

A victim=s advocate at the battered women=s shelter testified that Molloy
exhibited the characteristics of an abused spouse.  She also testified that a battered woman may
recant a claim of abuse out of fear or love.

Sergeant Clements with the Midland
Police Department testified that he and Officer Grimaldo investigated this
assault.  Clements stated that when they
interviewed Molloy, she had bruises over her face and knots over her
forehead.  She was trembling and seemed
frightened.  Grimaldo also testified that
Molloy seemed a Alittle scared@ and had bruises on her face. 
Clements testified that hands, feet, and elbows can be used as deadly
weapons.  The prosecutor asked, A[I]f somebody strikes somebody with a
hand or a knee or hits them or puts their hand around their neck, is that . . .
hand or that knee or that elbow or that foot capable of causing serious bodily
injury or death?@  Clements answered, AYes.@








The emergency room nurse who treated
Molloy testified that Molloy told her that her boyfriend beat her up with his
foot, hand, and knee.  Molloy had
moderate bruising on her chin, neck, and right ankle and a
six-by-two-centimeter severe bruise on her right shoulder.  She also had bruising and a severe,
one-and-a-half-centimeter laceration in her vaginal area.

Dr. Feierabend, the emergency room
doctor who treated Molloy, testified that Molloy had bruising over Asubstantial areas@ of her body, including the arms,
legs, and neck.  Her most severe injury
was in her vaginal area, where she had a large hematoma on one side and a large
laceration on the other.  The injuries to
her external genital area were so severe that it would have been too painful
for the doctor to do an internal pelvic exam.   
Dr. Feierabend stated that he had no reason to dispute Molloy=s testimony that she lost one to two
cups of blood; that amount of blood loss was consistent with the injuries that
he viewed.  He testified that he was
aware of situations in which a person died from being hit or kicked.  He also testified that hands, feet, elbows, and
knees can be deadly weapons.  In
particular, hands can be deadly when used for choking or to hit someone in the
head.








Hemphill was indicted for three
counts of aggravated assault.  The trial
court directed a verdict in his favor on the second and third counts, which
alleged that he used and exhibited a firearm and a knife, respectively, as
deadly weapons.  The court submitted the
case to the jury on both paragraphs of the first count of the indictment.  The first paragraph alleged that he committed
aggravated assault by using his foot, hand, knee, elbow, and an unknown object
as deadly weapons.  The second paragraph
alleged that he committed aggravated assault by causing serious bodily
injury.  The jury found Hemphill guilty
under the first paragraph, thus finding that he used his foot, hand, knee,
elbow, or an unknown object as a deadly weapon. 
The jury found Hemphill not guilty under the second paragraph, thus
finding that he did not cause serious bodily injury.

Standard and
Scope of Review

To evaluate the legal sufficiency of
the evidence, we view all the record evidence and reasonable inferences
therefrom in the light most favorable to the prosecution to determine whether a
rational jury could have made the challenged finding beyond a reasonable
doubt.  See Jackson v. Virginia,
443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); Teer v.
State, 923 S.W.2d 11, 17 (Tex. Crim. App. 1996).  The jury is entitled to resolve any conflicts
in the evidence, to evaluate the credibility of witnesses, and to determine the
weight of particular evidence.  See
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  The jury is also entitled to believe or
disbelieve a witness in whole or in part. 
Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).








In conducting our review, we consider
all of the evidence that was admitted at trial, including evidence that should
have been excluded.  Wilson v. State,
7 S.W.3d 136, 141 (Tex. Crim. App. 1999); Arzaga v. State, 86 S.W.3d
767, 777 (Tex. App.--El Paso 2002, no pet.). 
Moreover, evidence that is admitted without objection and without any
limiting instruction may be used and considered by the jury for all
purposes.  Hammock v. State, 46
S.W.3d 889, 892 (Tex. Crim. App. 2001); see also Tex. R. Evid. 802 (AInadmissible hearsay admitted without
objection shall not be denied probative value merely because it is hearsay.@).

Deadly
Weapon

A person may commit simple assault by
intentionally, knowingly, or recklessly causing bodily injury to another.  See Tex.
Pen. Code Ann. ' 22.01(a)(1) (Vernon Supp. 2004).  A person may commit aggravated assault by
committing assault and using or exhibiting a deadly weapon during the
commission of the assault.  See id.
' 22.02(a)(2).  Hemphill admits that he committed simple
assault by causing bodily injury to Molloy.   
Therefore, the only issue in this appeal is whether the evidence was
legally sufficient for the jury to find beyond a reasonable doubt that Hemphill=s hands, feet, elbows, or knees were
deadly weapons.

ADeadly weapon@ is defined to include Aanything that in the manner of its
use or intended use is capable of causing death or serious bodily injury.@ 
Id. ' 1.07(a)(17)(B).  ASerious bodily injury@ is Abodily injury that creates a
substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.@  Id. ' 1.07(a)(46).








Body parts, such as hands and knees,
may be deadly weapons based on their manner of use or intended use and their
capacity to produce death or serious bodily injury.  See Turner v. State, 664 S.W.2d 86, 90
(Tex. Crim. App. [Panel Op.] 1983); Gillum v. State, 888 S.W.2d 281, 288
(Tex. App.--El Paso 1994, pet. ref=d). 
To determine whether something is a deadly weapon, the jury may consider
all the surrounding facts, including the defendant=s words and whether the victim feared
death or serious bodily injury.  Blain
v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); English v. State,
647 S.W.2d 667, 669 (Tex. Crim. App. 1983); Denham v. State, 574 S.W.2d
129, 131 (Tex. Crim. App. 1978); Hernandez v. State, 649 S.W.2d 720, 722
(Tex. App.--Amarillo 1983, no pet.). 
When hands are alleged to be deadly weapons, the jury may consider the
relative size of the parties, the size and condition of the hands, and the
manner in which the hands were used.  See
Turner, 664 S.W.2d at 90 n.5; Brooks v. State, 900 S.W.2d 468, 472
(Tex. App.--Texarkana 1995, no pet.). 
The jury may also consider the wounds inflicted on the victim.  See Turner, 664 S.W.2d at 89.  It is not necessary, however, for the State
to prove that the victim actually sustained serious bodily injuries.  Jefferson v. State, 974 S.W.2d 887,
892 (Tex. App.--Austin 1998, no pet.); Brooks, 900 S.W.2d at 472; Clark
v. State, 886 S.W.2d 844, 845 (Tex. App.--Eastland 1994, no pet.).  The State must only prove that the hands were
capable of causing serious bodily injury in the way they were used or
intended to be used.  Hill v. State,
913 S.W.2d 581, 584 (Tex. Crim. App. 1996); Jefferson, 974 S.W.2d at
892; Gillum, 888 S.W.2d at 288.








In this case, Dr. Feierabend and
Sergeant Clements testified that hands are capable of causing serious bodily
injury.  They specifically indicated that
hands become deadly weapons when they are used to choke another person.  In her statements to the police, Molloy said
that Hemphill put her in a choke hold and squeezed her neck so hard that she
could not scream or breathe and she thought she was going to die.  She also described Hemphill=s hands as Abad@ and Apowerful.@ 
Molloy testified at trial that she is five-feet-two-inches tall and
weighs about 105 pounds, whereas Hemphill is about five-feet-eight-inches tall
and weighs about 200 pounds.  Molloy told
the officers that Hemphill threatened to kill her.  A photograph depicting a bruise on Molloy=s neck was admitted into
evidence.  Moreover, Molloy incurred
severe injuries when Hemphill kneed her vaginal area during the same
incident.  From all this evidence, the
jury could have rationally concluded that Hemphill=s hands, in the manner they were used
or intended to be used in this incident, were capable of causing serious bodily
injury.  See Lane v. State, 111
S.W.3d 203, 205-07, 209-10 (Tex. App.--Eastland 2003, pet. granted) (holding
evidence was legally sufficient to prove defendant=s hands and feet were deadly weapons
where wife stated defendant hit her in the head with his fist and kicked her in
the back and chest with his foot and where medical and police personnel
testified that hands and feet could be used as deadly weapons against the head,
back, or chest, although wife recanted at trial and did not suffer serious
bodily injuries).








Hemphill points out that Molloy=s only sworn testimony was her trial
testimony and in that testimony she recanted much of what she said in her prior
statements.  She testified that Hemphill
only hit her once in the face and kneed her once in the vaginal area.  Furthermore, her testimony indicates that
Hemphill was only reacting to her aggression against him when he hit and kneed
her.  Hemphill argues that the State was
therefore required to prove that his use of his hand to hit Molloy=s face in self-defense or his use of
his knee to strike her vaginal area while she was attacking him amounted to the
use of a deadly weapon.  He further
argues that although Dr. Feierabend and Sergeant Clements testified generally
that hands and knees may be deadly weapons, their testimony does not indicate
that hands and knees are deadly weapons when used in the particular way that
they were used in this case, i.e., when a hand hits a face once or a
knee strikes a woman=s vaginal area once.

Hemphill=s argument assumes that the jury was
required to base its verdict on the version of events that Molloy presented at
trial and that the jury could not consider any of the information in Molloy=s prior statements.  However, because the information from the
prior statements was admitted at trial with no limiting instruction, the jury
was free to believe the version of events in the prior statements instead of
Molloy=s trial testimony.   See Hammock, 46 S.W.3d at 892; Sharp,
707 S.W.2d at 614.  Moreover, both Dr.
Feierabend and Sergeant Clements indicated that hands may be deadly weapons
when used to choke someone, and Molloy said in her statements that Hemphill
used his hands to choke her.  Thus, there
is evidence that hands may be deadly weapons when used in the particular manner
that they were used in this case.








Hemphill also argues that Molloy=s injuries were insufficient to
establish that he used a deadly weapon. 
He relies on Danzig v. State, 546 S.W.2d 299 (Tex. Crim. App.
1977), overruled by Denham v. State, 574 S.W.2d 129 (Tex. Crim. App.
1978).  In Danzig, the defendant
was charged with committing aggravated assault by using a knife as a deadly
weapon.  She allegedly stabbed the victim
in the arm and over the nose with a small penknife that had a three- or
four-inch blade.  Danzig, 546
S.W.2d at 299-300.  The court decided
that the wounds inflicted on the victim are factors to be considered in
determining whether a weapon is deadly.  Id.
at 301.  The court then held that the
evidence was insufficient to establish that the knife was a deadly weapon
because Athe wounds, although [n]ear vital
areas, were not shown, by expert testimony or otherwise, to have been likely to
result in death or serious bodily injury.@ 
Id. at 302.  The court
further stated that deadliness cannot be inferred solely from superficial
wounds; instead, the State must present some evidence, usually through expert
testimony, that the weapon was used or intended to be used in a way that was
capable of causing death or serious bodily injury.  Id.








The court overruled Danzig in Denham
v. State.  As in Danzig, the
defendant in  Denham was charged
with aggravated assault by using a knife as a deadly weapon.  She stabbed the victim in the shoulder with a
butcher knife that had a seven- or eight-inch blade.  Denham, 574 S.W.2d at 130-31.  The defendant then informed the victim that
he was A>next on [her] list.=@ Id. at 130.  The victim testified that he feared for his
life.  Id.  The court held that this evidence was
sufficient to establish that the knife was a deadly weapon.  Id. at 131-32.  The court expressly overruled Danzig
insofar as it required expert testimony to establish that a weapon is
deadly.  Id. at 131.  The court also stated that although the
wounds inflicted on the victim are factors to be considered in determining
deadliness, it is not necessary that wounds be inflicted for a knife to be a
deadly weapon.  Id. at 130.

Hemphill acknowledges that Denham
overruled Danzig=s requirement of expert testimony, yet he suggests that Danzig
still requires the victim to suffer death or serious bodily injury before a
weapon may be declared deadly.  We
disagree.  Denham clearly states
that a knife may be a deadly weapon even if no wounds are inflicted.  And, as noted above, other appellate courts
have held that hands may be deadly weapons even if the victim did not sustain
serious bodily injuries.  See
Jefferson, 974 S.W.2d at 892; Brooks, 900 S.W.2d at 472; Clark,
886 S.W.2d at 845; see also Sweeten v. State, 686 S.W.2d 680, 684-85
(Tex. App.--Corpus Christi 1985, no pet.) (stating that Danzig is
questionable authority for the proposition that a knife is not a deadly weapon
even if it was used to inflict serious wounds). 
Considering all the evidence, we conclude that the evidence is legally
sufficient to establish that Hemphill=s hands were deadly weapons, despite
the fact that Molloy did not actually sustain serious bodily injury.








Conclusion

For the reasons stated herein, we
overrule Hemphill=s sole issue and affirm the judgment of the trial court.

 

SUSAN
LARSEN, Justice

April 1, 2004

 

Before Panel No. 3

Barajas, C.J., Larsen, and
Chew, JJ.

 

(Do Not Publish)