Affirmed and Memorandum Opinion filed July 6, 2006









Affirmed and Memorandum Opinion filed July 6, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO.  14-05-00326-CR 

       

____________

 

JOHN ANTHONY WEBSTER, Appellant

 

v.

 

THE STATE OF TEXAS, Appellee

 

 

 

 

On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 991,696

 

 

 

 M E M O R
A N D U M  O P I N I O N

            Appellant John Anthony Webster
challenges his conviction of aggravated assault asserting legal and factual
insufficiency of the evidence. We affirm. 




 








I.  Factual and Procedural Background

            Appellant was charged by indictment
with the felony offense of aggravated assault. The State alleged that appellant
used a deadly weapon, a knife, in committing the offense.  Appellant pleaded “not
guilty” and waived his right to a trial by jury.  At the bench trial that
followed, the parties presented two completely different versions of the
events.

            Appellant’s
former girlfriend, Carrie Rogers, is the complainant in the case. Ms. Rogers
testified that appellant stabbed her with a knife. Before the stabbing, she had
attempted to get a protective order against appellant, but had been unable to
complete the process.  She explained that she and her roommate, Lena Franklin
had gone downtown to the courthouse for this purpose, but their mission was
interrupted by a fire drill that required everyone to exit the courthouse. 
Instead of waiting for permission to re-enter the courthouse, Ms. Rogers and
her friend decided to leave and return later to apply for the protective order.

             When the
women returned to their apartment complex, Ms. Franklin went up to the third
floor to check on the apartment because appellant had broken into the apartment
on several prior occasions.  Ms. Rogers waited briefly on the second floor
before going up to the apartment.  When she arrived outside the apartment, she
noticed that the door was cracked and the deadbolt had been pried open.  Ms.
Rogers told Ms. Franklin to remain outside the apartment, while she called the
police from her cellular phone.  While Ms. Rogers was on the phone with the
police and her friend was standing just a few feet away, appellant jumped out
from behind a wall with a five or six-inch long knife in his hand.  Appellant
grabbed Ms. Rogers by the hair, and said, “B----, I ought to kill you.  I ought
to kill you.”  Ms. Rogers begged appellant to stop, but appellant replied, “No.
B----, no,” and bent her over and stabbed her once in the back, under her left
shoulder blade.  Appellant then fled from the apartment complex and Ms. Rogers
ran downstairs, toward her car.  Shortly thereafter, an ambulance and the
police arrived, and she was rushed to the hospital for medical treatment.  

            At trial, Ms.
Franklin corroborated the events described by Ms. Rogers.  Ms. Franklin stated
that appellant jumped out at Ms. Rogers while Ms. Rogers was calling the
police.  According to Ms. Franklin, appellant grabbed Ms. Rogers’ hair and
pinned her against the wall. She testified that appellant was carrying a “big,
long knife,” which Ms. Franklin estimated to be about “nine or ten inches
long.”  When appellant pointed the knife toward Ms. Rogers, Ms. Franklin ran
downstairs to get help.  She asked a woman with a cellular phone to call
9-1-1.  When Ms. Franklin returned to the third floor, she saw appellant stab
Ms. Rogers in the back, leaving a wound from which blood was spurting.  Ms.
Franklin testified that appellant immediately ran away after the stabbing. 

            Appellant
also testified at trial, but he presented a very different account of how the
stabbing occurred. According to appellant, he went to the apartment complex to
retrieve some belongings he had left behind after Ms. Rogers told him to move
out.  When he arrived he noticed that the apartment door was open.  Appellant went
to find a pay phone to call Ms. Rogers.  However, on his way to the phone, he
ran into Ms. Rogers and Ms. Franklin on the second floor landing.  Appellant
testified that when Ms. Rogers saw him, she dropped her keys on the ground and
pulled a gun out, at which point he grabbed her by the shirt and said, “What
are you trying to do? Are you trying to shoot me?”  According to appellant, Ms.
Rogers begged him not to hurt her while they struggled over the gun.  Then, as
Ms. Rogers threw herself against the wall, she accidently fell into a knife
that appellant had pulled out of his pocket.  Appellant stated that he then
took this opportunity to get away.  According to appellant, the knife was a
small steak knife that he carried with him because he was a cook. 

            The second
defense witness was Velma Wilson, appellant’s great-aunt.   Ms. Wilson
testified that Ms. Rogers called her two days after the incident and told her
that she had fired a gun at appellant.  Ms. Wilson also testified that Ms.
Rogers told her that she accidentally backed into appellant’s knife. 
Testifying as a rebuttal witness for the State, Ms. Rogers denied calling Ms.
Wilson, and denied firing a gun at appellant.  Ms. Rogers testified that
neither she nor Ms. Franklin fired any shots at appellant and that the stabbing
was not accidental.

            Upon hearing
the above testimony, the trial court found appellant guilty of aggravated
assault.  During punishment, appellant pleaded “true” to the enhancement
allegation and the trial court sentenced him to thirty years’ confinement in
the Texas Department of Criminal Justice, Institutional Division. 

II.  Legal and Factual Sufficiency 

            In two issues, appellant asserts that
the evidence is legally and factually insufficient to support his conviction. 
More specifically, he alleges that the State did not prove beyond a reasonable
doubt that he used a deadly weapon, namely a knife, in the commission of the
offense.  

            In evaluating
a legal-sufficiency challenge, we view the evidence in the light most favorable
to the verdict. Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App.
2000).  The issue on appeal is not whether we, as a court, believe the State’s
evidence or believe that appellant’s evidence outweighs the State’s evidence.  Wicker
v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not
be overturned unless it is irrational or unsupported by proof beyond a
reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact, “is the sole judge of the credibility
of the witnesses and of the strength of the evidence.”  Fuentes v. State, 991
S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to believe or
disbelieve any portion of the witnesses’ testimony.   Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with conflicting
evidence, we presume the trier of fact resolved conflicts in favor of the
prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim. App.
1993).  Therefore, if any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt, we must affirm.  McDuff v.
State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

            In contrast,
when evaluating a challenge to the factual sufficiency of the evidence, we view
all the evidence in a neutral light and inquire whether the jury was rationally
justified in finding guilt beyond a reasonable doubt.  Zuniga v. State,
144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  A reviewing court may find the
evidence factually insufficient in two ways.  Id.  First, when
considered by itself, the evidence supporting the verdict may be too weak to
support the finding of guilt beyond a reasonable doubt.  Id.  Second,
after weighing the evidence supporting the verdict and the evidence contrary to
the verdict, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Id. at
484-85.  In conducting the factual-sufficiency review, we must employ
appropriate deference so that we do not substitute our judgment for that of the
fact finder. Id. at 481-82.  Our evaluation should not intrude upon the
fact finder’s role as the sole judge of the weight and credibility given to any
witness’s testimony.  Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  In conducting a factual-sufficiency review, we must discuss the
evidence appellant claims is most important in allegedly undermining the jury’s
verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App.  2003).

            A person
commits assault if he intentionally, knowingly, or recklessly causes bodily
injury to another; or he intentionally or knowingly threatens another with
imminent bodily injury; or he intentionally or knowingly causes physical
contact with another when the person knows or reasonably should believe that
the other will regard the contact as offensive or provocative.  Tex. Penal Code Ann. § 22.01.  Assault
becomes aggravated assault if the person committing assault causes serious
bodily injury or uses or exhibits a deadly weapon during the commission
of the assault.  Tex. Penal Code Ann. §
22.02.  The Penal Code does not require that the actor actually intend death or
serious bodily injury.  McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App.  2000).  An object is a deadly weapon if the actor intends a use of the
object in which it would be capable of causing death or serious bodily injury. Id.   In this case, the indictment charged appellant with intentionally or knowingly
causing bodily injury to Ms. Rogers.  The aggravating factor was the use of the
knife as a deadly weapon.

            Appellant
argues that the knife cannot be a deadly weapon under the statutory definition.
The Penal Code defines a “deadly weapon” as either (A) a firearm or anything
manifestly designed, made, or adapted for the purpose of inflicting death or
serious bodily injury; or (B) anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury .”  Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon Supp. 2005).  A knife is not a deadly weapon per se or by design.  See Thomas v.
State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991).   However, a knife can
be a deadly weapon if in the manner of its use or intended use it was capable
of causing death or serious bodily injury.   Tex.
Pen. Code Ann. § 1.07(a)(17)(B); Garcia v. State, 17 S.W.3d 1, 4
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d).  Thus, a knife, as an
“assaultive instrument,” may be considered a “deadly weapon” under the Penal
Code’s second definition.  See Herbert v. State, 631 S.W.2d 585, 586
(Tex. App.–El Paso 1982, no pet.). 

            Whether a
particular knife is a deadly weapon by design, a deadly weapon by usage, or not
a deadly weapon at all depends on the evidence of each individual case.  Brown
v. State, 716 S.W.2d 939, 947 (Tex. Crim. App. 1986).  An essential
question becomes whether there is sufficient evidence to show the actor used
the knife or intended to use it in such a way that it was “capable of causing
death or serious bodily injury.”   Alvarez v. State, 566 S.W.2d 612, 614
(Tex. Crim. App. 1978).

            Factors
considered in determining whether a knife is a deadly weapon in its use or
intended use are: (1) the size, shape, and sharpness of the knife, (2) the
manner of its use or intended use, (3) the nature or existence of inflicted wounds,
and (4) the testimony of the knife’s life-threatening capabilities, if used.  Thomas,
821 S.W.2d at 619.  Also relevant are the surrounding circumstances of the
knife’s usage, such as any threats by the defendant, the distance between the
defendant and the victim, and any witness description of the knife. Wade v.
State, 951 S.W.2d 886,  892 (Tex. App.—Waco 1997, pet. ref’d).  Intent to
cause serious bodily injury also may be shown by evidence of “assertive
conduct” by the attacker wielding the knife.  Id. at 892 n. 2.  If other
evidence indicates that the knife used in the 

 class=Section3>

offense is a deadly
weapon, there is no requirement that the victim sustain any injury.   Ford
v. State, 828 S.W.2d 525, 527 (Tex. App.—Houston [14th Dist.] 1992, pet.
ref'd). 

            In contending
that the knife is not a “deadly weapon,” appellant makes two main arguments. 
First, he states that under Danzig v. State, 546 S.W.2d 299 (Tex. Crim.
App. 1977), the State was required to offer expert testimony establishing that
the knife in question was a deadly weapon or could be used to inflict death or
serious bodily injury.  This argument lacks merit because the expert testimony
requirement in Danzig was expressly overruled in Denham v. State, 574
S.W.2d 129, 131 (Tex. Crim. App. 1978) (holding that Danzig is overruled
insofar as it requires expert testimony to establish that a weapon is deadly). 
Thus, the State was not required to offer expert testimony to establish that
the knife appellant used to stab Ms. Rogers was used as a deadly weapon.  The
testimony of Ms. Rogers and Ms. Franklin regarding the use of the knife was
sufficient.   See Revell v.  State, 885 S.W.2d 206, 209 (Tex.
App.–Dallas 1994, pet. ref’d) (concluding that “[a] person need not be wounded
for a knife to be used as a deadly weapon. The State need not introduce expert
testimony to establish the ‘deadly’ nature of a knife [although such evidence
could be useful].”).

            Appellant
also points to a conflict in the testimony as to the length of the blade and
the nature of the knife to argue that, while Ms. Rogers and Ms. Franklin
described the knife as a butcher knife, somewhere between five and nine inches
long, appellant and his great-aunt testified that the knife was a steak knife. 
Appellant also states that there was no testimony as to the sharpness of the
knife, which he claims could have made a difference in the trial court’s
finding that the knife was used as a deadly weapon.[1]

            Appellant
waived his right to a trial by jury and chose the trial court as the finder of
fact.  When sitting as the sole trier of fact, the trial court becomes the
exclusive judge of the credibility of the witnesses and the weight to be given
to their testimony.  See Mattias v. State, 731 S.W.2d 936, 940 (Tex.
Crim. App. 1987).  The trial court is authorized to accept or reject any or all
of the testimony of the witnesses.  Id. When faced with conflicting
evidence on a defendant’s appeal of an adverse verdict, we presume the trier of
fact resolved conflicts in favor of the prosecution.  See Turro, 867
S.W.2d at 47.  Thus, by affirmatively finding that the knife was a deadly
weapon, the trial court chose to believe the State’s witnesses’ trial testimony
over any discrepancies in other witnesses’ accounts.

            Ms. Rogers
and Ms. Franklin testified that appellant stabbed Ms. Rogers in the back with a
butcher knife and that the blade of the knife was five to nine inches long.  See
De Leon v. State, 865 S.W.2d 139, 142 (Tex. App.–Corpus Christi 1993, no
pet.) (concluding that a rational trier of fact could have found that a
“Rambo”-style knife was a deadly weapon).   Ms. Franklin testified that the
knife appeared to be “sharp.”  Appellant also used threatening words and told
Ms. Rogers that he “ought to kill her.”  Ms. Rogers testified that she was
scared and thought she was “fixin’ to die.”   Even without injury,[2]
presentment of the knife coupled with the fear of the victim are sufficient to
constitute a threat by the accused.  See Hatchett v. State, 930
S.W.2d 844, 848-49 (Tex. App.–Houston [14th Dist.] 1996, pet. ref’d) (noting
that defendant’s threatening statement and close proximity were factors
contributing to weapon’s deadliness); Billey v. State, 895 S.W.2d 417,
422 (Tex. App.–Amarillo 1995, pet. ref’d) (concluding that where the victim
testifies that she was in fear of serious bodily injury or death, a verbal
threat by the accused is not required for the fact finder to conclude that
threats were actually made). 

            The record
amply demonstrates that the evidence is legally and factually sufficient to
support the trial court’s judgment.  Based on the evidence adduced at trial, a
rational trier of fact could conclude, beyond a reasonable doubt, that the
knife appellant used in the stabbing was a deadly weapon. Further, the trial
court’s decision is not so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust.   See Zimmerman v. State, 754 S.W.2d
402, 405 (Tex. App.–Corpus Christi 1988, pet. ref’d) (holding evidence
sufficient that kitchen carving knife was deadly weapon when knife’s blade was
6.5 inches long, sharpened, and pointed at tip; defendant threatened the victim
with the knife, and victim felt knife’s sharpness and was afraid defendant
would kill her).  Accordingly, we overrule appellant’s two issues. 

            The trial
court’s judgment is affirmed.

 

 

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

 

Judgment rendered and Memorandum
Opinion filed July 6, 2006.

Panel consists of Justices Anderson,
Edelman, and Frost.

Do Not Publish — Tex. R. App. P. 47.2(b).









[1] 
This statement is an incorrect assessment of the testimony given at trial.  Ms.
Franklin testified that the knife was big, long, and looked “sharp.” 





[2] 
Appellant contends that because Ms. Rogers’ injury did not require staples or
stitches, it was not a serious bodily injury.  However, the law does not
require the injury to be serious bodily injury, but only that the knife was
used in a manner that could cause serious bodily injury or death.  The nature
of the inflicted wounds is only one factor among many.  See Wade, 951
S.W.2d at 893 ( stating, “[w]ounds need not be inflicted before a knife can be
found to be a deadly weapon.”); see also Hatchett v. State, 930 S.W.2d
844, 848-49 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d) (holding that the
State may prove particular knife used in assault to be deadly weapon by showing
its size, shape, and sharpness, manner of its use or intended use, and its
capacity to produce death or serious bodily injury).